# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| BRENT GEPHART, an individual, | ) |
| | ) |
| Plaintiff, | ) Case No.: 2:18-cv-01670-GMN-CWH |
| | ) |
| vs. | ) **ORDER** |
| | ) |
| DOUG MERRYMAN, as an individual and as the | ) |
| managing member of OPMNY, LLC, | ) |
| | ) |
| Defendant. | ) |

Pending before the Court is Plaintiff Brent Gephart's (Plaintiff's) Emergency Motion for Temporary Restraining Order or Preliminary Injunction ("Motion"), (ECF No. 12). Defendant filed a Response, (ECF No. 14), on October 18, 2018, and the Court held a hearing for the Motion on October 19, 2018. For the reasons discussed below, the Court **grants** Plaintiff's Motion.

## I.    __BACKGROUND__

This case concerns a business dispute regarding companies owned by Plaintiff and Defendant. The company at the center of this dispute is OPMNY, LLC ("OPMNY"). Plaintiff and Defendant are the sole "equitable and legal owners" of OPMNY. (Am. Compl. ¶ 5, ECF No. 11). Specifically, Plaintiff owns a 49% interest, and he controls the development of technology; whereas Defendant owns a 51% interest, and he controls the financial aspects of the company. (*Id*.); (Emergency Mot. TRO 5:3–5, ECF No. 12). OPMNY is in the business of providing merchant services and marketing to businesses that accept credit cards as payments for goods or services. (Decl. Brent Gephart ¶ 5, ECF No. 12-1).

To provide those merchant services, OPMNY operates alongside two other companies also run by Defendant and Plaintiff: Ploutos Holdings, LLC and Instant Accept, LLC. (Am. Compl. ¶ 7). According to Plaintiff, Ploutos Holdings, LLC operates a "payment gateway" known as "Prismpay," and OPMNY merely receives the revenue from Ploutos Holdings, LLC to "pay the bills" for the above-named companies. (Decl. Brent Gephart ¶¶ 5(a), 13). In contrast, Defendant argues that Prismpay is an "asset of OPMNY," and OPMNY provides merchants with the ability to use that technology for "secure credit card and direct payments processing." (Decl. Dough Merryman ¶¶ 4, 22, ECF No. 14-2). Undisputed, however, is that the payment gateway technology of Prismpay enables merchants to securely transmit credit card and transaction data to payment processing platforms that subsequently "clear the credit card transactions and fund the merchants." (Decl. Brent Gephart ¶ 5(a)); (Resp. 8:6–10, ECF No. 14).

In 2018, Plaintiff alleges that he discovered evidence of Defendant misusing the technology of OPMNY and mismanaging the company. (Am. Compl. ¶ 10, ECF No. 11). After attempting to investigate those wrongful actions, Plaintiff filed suit against Defendant on September 1, 2018, in this Court naming Defendant and OPMNY as parties. (ECF No. 1). Defendant then filed a Motion to Dismiss Plaintiff's Complaint, (ECF No. 6), after which Plaintiff filed an Amended Complaint, (ECF No. 11). The Amended Complaint removed OPMNY from the action and named only Defendant as a party. (*See id.*). The Amended Complaint alleges four claims against Defendant: (1) breach of fiduciary duty; (2) constructive fraud; (3) embezzlement/conversion; (4) accounting. (*Id.* ¶¶ 14–40).

However, four days after filing the initial Complaint in this Court, Plaintiff filed two additional suits against Defendant in the Delaware Chancery Court—first seeking dissolution of Ploutos Holdings, LLC, and second seeking an order allowing Plaintiff to "inspect the books and records of Ploutos and Instant Accept." (Decl. Brent Gephart ¶ 20). The Delaware

Chancery Court issued a Status Quo Order prohibiting Defendant from taking specific actions to harm Ploutos property during the pendency of those actions. (*Id.* ¶ 27).

Defendant also filed his own suit against Plaintiff on October 4, 2018. (*See* Resp. 10:6–12); (see Ex. A-10 to Resp., ECF No. 14-12).  Defendant's case is before the Eighth Judicial District Court of Nevada, and he sues on behalf of himself individually as well as on behalf of OPMNY. (*See* Resp. 10:6–12).

In the instant Motion, Plaintiff essentially seeks to extend the Status Quo Order from the Delaware Chancery Court by requesting an emergency temporary restraining order or preliminary injunction to prevent Defendant from taking certain actions with respect to OPMNY. (*See* Emergency Mot. TRO at 2–4).

## II. <u>LEGAL STANDARD</u>

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001).  Furthermore, a temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22.

The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming

the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

"In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l. Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)). "The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, *Federal Practice and Procedure, Civil*, § 2949 at 471 (1973)).

## III.    DISCUSSION

In the instant Motion, Plaintiff moves for a temporary restraining order to prevent Defendant from engaging in conduct that would damage OPMNY. (Emergency Mot. TRO 15:17–23, ECF No. 12). In response, Defendant argues that the Court should deny Plaintiff's request because the Court does not have subject-matter jurisdiction over this case; because Plaintiff failed to follow the Court's Local Rules in filing the instant Motion; and because the evidence in this case does not warrant a temporary restraining order or preliminary injunction. (Resp. 2:4–4:21, ECF No. 14). The below discussion addresses each of Defendant's arguments in turn, beginning first with the Court's jurisdiction over this case.

### A.    Subject-Matter Jurisdiction

Plaintiff's Amended Complaint asserts that the Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are completely diverse and the amount in controversy exceeds $75,000. (Am. Compl. ¶ 1, ECF No. 11). However, Defendant

argues that Plaintiff's failure to include OPMNY as a party in the Amended Complaint is in a violation of Federal Rule of Civil Procedure 19. (Resp. 3:1–11).  According to Defendant, OPMNY must be included as a party, which would destroy complete diversity under 28 U.S.C. § 1332 because OPMNY is a limited liability company with a citizenship in the same states as both its members, the Plaintiff and the Defendant. (*Id.* 3:1–11).

To determine whether a party must be added to the case under Rule 19 of the Federal Rule of Civil Procedure, courts take a two-step approach.  First, a court must determine whether the absent party is "necessary" to the case. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).  If the party is "necessary," the court must then determine whether that party is "indispensable" so that "in equity and good conscience" the suit should be dismissed. *Id.*

A party is "necessary" under the first step if: (1) "complete relief" is not possible among those already parties to the suit; and (2) the absent party has a "legally protected" interest in the suit. *Id.*  If the court finds that a party is not "necessary," then the court does not need to consider the second step under Rule 19 and the case may continue without the absent party. *Id.* at 559.

In this case, Defendant argues that OPMNY is "necessary" and "indispensable" under Rule 19 because Plaintiff brings his claims to seek relief on behalf of OPMNY—and thus this is a "derivative claim" rather than as a "direct claim." (Resp. 13:15–14:8).  Moreover, Defendant cites *Ross v. Bernhard*, 396 U.S. 531, 539 (1970), for the position that if the claims resemble a derivative claim, OPMNY would then be a "necessary party" because such action arises from the company itself.  (*See id*.).  However, this argument fails to recognize numerous cases decided by this District  which recognizes a narrow exception relieving a court from making the hardline designation of a claim as direct versus derivative. *See, e.g., Carstarphen v. Milsner*, 693 F. Supp. 2d 1247, 1249 (D. Nev. 2010).  For example, in the context of a closely

held corporation, this District has adopted an exception which allows minority shareholders to file a direct action for wrongs that normally must be derivative. *Id.*; *see Simon v. Mann*, 373 F.2d 1196, 1198 (D. Nev. 2005) (recognizing the exception for the first time).

Though it is a question of state law whether a claim is derivative or direct, *see Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613 (9th Cir. 1987), the Nevada Supreme Court has not foreclosed or limited this District's interpretation of state law to permit the above-mentioned exceptions. The Nevada Supreme Court's recent decision in *Parametric Sound Corp. v. Eighth Judicial Dist. Court in & for Cty. of Clark*, 401 P.3d 1100 (Nev. 2017) specifically discussed when a claim is direct or derivative under Nevada law. *Parametric Sound Corp.* did not, however, render an opinion about the exceptions created in *Simon v. Mann*; nor do the facts or analysis in *Parametric Sound Corp.* suggest that the *Simon v. Mann* exceptions are no longer viable. Defendant fails to provide case law demonstrating that the decision in *Simon v. Mann*, or anylater cases relying upon that decision, have been rejected.

the Court finds that the facts in this case resemble that of a closely held corporation, and thus warrant the application of the exception created in *Simon v. Mann* to categorize a claim as direct rather than derivative. *See* 373 F.2d at 1198. Plaintiff and Defendant are the only owners of OPMNY, with Plaintiff serving as a minority shareholder owninga 49% interest while Defendant owns a 51% interest. (Am. Compl. ¶ 5); (Emergency Mot. TRO 5:3–5, ECF No. 12). Accordingly, because of the exception allowing minority shareholders to file a direct action for wrongs that normally must be derivative, the Court considers the Plaintiff's claims as "direct" claims. In effect, then, OPMNY need not be added as a party to this case. *See Carstarphen v. Milsner*, 693 F. Supp. 2d 1247, 1253 (D. Nev. 2010) ("Because we do not characterize [Plaintiff's] suit as derivative, American Medflight is not a necessary party to the suit, and its absence as a party is not a basis for dismissal . . . ."). Therefore, the Court has subject-matter jurisdiction through diversity under 28 U.S.C. § 1332 because the only named parties are

citizens of different states. (Am. Compl. ¶ 3) (stating that Plaintiff is a citizen of Georgia and Defendant is a citizen of California).

### B.     Violation of the Court's Local Rules

Defendant also argues that the Court should not consider Plaintiff's instant Motion because Plaintiff's failed to file a mandatory certification for emergency motion practice. (Resp. 20:19–27).  Local Rule 7-4 requires "[a] statement of movant certifying that, after participation in the meet-and confer process to resolve the dispute, the movant has been unable to resolve the matter without court action." D. Nev. Local R.7-4.  However, in light of the parties' recent prior communication about the central issues in this dispute during  the Delaware Chancery Court litigation, the Court finds that Plaintiff's failure to include a certification statement does not render the instant Motion premature.

### C.     Temporary Restraining Order

Finding no impediment, this Court now addresses the merits of Plaintiff's request for a temporary restraining order.A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008). The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

Here, the Court finds that each factor favors the granting of a temporary restraining order.  Looking first to whether there is a likelihood of success on the merits, the Court examines the claims and evidence supporting those claims.  Plaintiff's Amended Complaint asserts claims for breach of fiduciary duties owed to Plaintiff by Defendant during his operation

of OPMNY and embezzlement of OPMNY funds. (*See* Am. Compl. at 9–14). To support these claims, Plaintiff provides evidence that Defendant has been misusing OPMNY's business operations in violation of federal banking laws and failing to report funds earned by OPMNY. (Decl. Brent Gephart ¶ 15, ECF No. 12-1); (Balance Sheet, ECF No. 12-8). At this early stage of the case, the Court finds that this evidence weighs in favor of Plaintiff's likelihood of success on the merits.

Looking next to the likelihood of irreparable harm, Plaintiff argues that an injunction is necessary to "preserve the status quo" because "OPMNY stands to lose customers, goodwill, and revenue." (Emergency Mot. TRO 19:27–28). Plaintiff also provides evidence that one of OPMNY's customers (Worldpay), notified Defendant on September 11, 2018, that it was declining to renew its underwriting approval of OPMNY because of the "nature of the allegations" raised in this dispute. (Email to Doug Merryman (Defendant), ECF No. 12-25)). During the hearing, Plaintiff also clarified that this suit was primarily brought because Defendant was claiming OPMNY possessed rights over the Prismpay intellectual property so the Delaware Status Quo Order did not prevent him from exercising his authority as the manager of OPMNY. In response to the Court's inquiry, Defendant declined to agree that OPMNY did not posses any authority over the intellectual property sought to be preserved by the Delaware Status Quo Order. Thus, at this stage, the Court finds that this factor weighs in favor of granting the temporary restraining order to prevent the irreparable harm of threatened loss of prospective customers or goodwill of OPMNY. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).

Last, the Court finds that both the balance of equities and public interest favor a temporary restraining order. As stated in the hearing on the instant Motion, the Court's granting of a temporary restraining order should only preserves the current status of OPMNY and the protect the Prismpay technology; it does not grant any additional rights to Plaintiff that

did not exist before.  Further, the Court required Plaintiff to tailor its proposed terms for the temporary restraining order to preserve OPMNY and its technology in its current state, thereby preventing any change to the business relationships and connections between OPMNY, its customers, and those associated with OPMNY.

## IV.  **CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiff's Emergency Motion for Temporary Restraining Order ("Motion"), (ECF No. 12), is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties may file supplemental briefs before 5:00 pm Tuesday, October 30, 2018 addressing the extension of the Temporary Restraining Order beyond 14 days.

**DATED** this ___19___ day of October, 2018.


_____
Gloria M. Navarro, Chief Judge
United States District Judge